UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILIA MACEDO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DOLGEN CALIFORNIA, LLC, a Limited Liability Company; DG STRATEGIC VII, LLC, a Limited Liability Company; and DOES 1-100,<br><br>Defendants. | No. 1:23-cv-00840-KES-CDB<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANTS' MOTION FOR SANCTIONS<br><br>Docs. 3, 16 |

Plaintiff Cecilia Macedo moves to remand this action to the Kern County Superior Court on the grounds that defendants Dolgen California, LLC and DG Strategic VII, LLC (collectively "Dollar General") have not established that the amount in controversy in this diversity case exceeds $75,000. Doc. 3. She also requests related attorneys' fees, arguing that Dollar General's removal to federal court was frivolous. *Id.* Following a subsequent settlement demand in excess of $500,000, Dollar General separately moves for sanctions against Macedo and her counsel for filing the motion to remand, asserting that, in light of the demand, Macedo knew her motion to remand was frivolous at the time of filing and, thus, filing it and refusing to withdraw it amounts to vexatious conduct. Doc. 16. For the reasons set forth below, both motions are denied.[1]

---

[1] In her opposition to Dollar General's motion for sanctions, Macedo requests Dollar General's counsel be sanctioned for filing the motion for sanctions. Doc. 17 at 10. This request is also denied.

1

## I.  BACKGROUND

On March 27, 2023, plaintiff Cecilia Macedo filed this action in Kern County Superior Court against her former employer, Dollar General, and other fictitious defendants, alleging pregnancy discrimination, failure to prevent pregnancy discrimination, retaliation, failure to accommodate, and failure to engage in the good faith interactive process in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940 et seq.; retaliation for the use of sick leave under sections 233 and 246.5(c)(1) of the California Labor Code; retaliation in violation of section 98.6 of the California Labor Code; retaliation in violation of, and interference with, the California Family Rights Act ("CFRA"), Cal. Gov't Code § 12945.2; failure to provide rest periods under section 12 of the Industrial Welfare Commission, Cal. Code Regs. tit. 8, § 11040; failure to reimburse for work-related expenses under section 2802 of the California Labor Code; and wrongful termination in violation of public policy.  Doc. 1, Ex. A ("Compl.").

The complaint alleges that Macedo began her employment with Dollar General as a warehouse associate around August 25, 2021.  Compl. ¶ 9.  After experiencing nausea and taking sick leave in or around August 2022, Macedo learned that she was pregnant in September 2022.  Compl. ¶¶ 10–11.  On or around September 19, 2022, Macedo informed one of Dollar General's human resources representatives of her pregnancy and requested a list of her job duties to provide to her physician so that her physician could determine any necessary accommodations.  Compl. ¶¶ 11–12.  Macedo states that Dollar General refused to provide her a list of her job duties and terminated her the following day, on September 20, 2022.  Compl. ¶¶ 13, 14.  Macedo also alleges that, during her employment, Dollar General failed to reimburse Macedo for necessary business expenses, such as a cell phone, and did not permit her to take uninterrupted rest breaks.  Compl. ¶¶ 15, 16.

The complaint states that Macedo "suffered and continues to suffer unnecessarily."  Compl. ¶ 17.  She requests damages for emotional distress, loss of earnings, medical expenses, work-related expenses, lost benefits, expenses incurred in obtaining substitute employment, punitive damages, and attorneys' fees pursuant to FEHA and section 2802 of the California Labor Code.  Compl. ¶¶ 23–25, 27, 35–39, 49, 50–51, 60–62, 68–70, 76–79, 84–86, 96–99, 107–10,

1    118–20, 124–25, 133–35.  The complaint does not allege a specific amount of damages.  *See*

2    *generally* Compl.  It merely states that Macedo's damages exceed $25,000.  Compl. ¶ 136.

3          On June 1, 2023, Dollar General removed this case to this Court based on diversity

4    jurisdiction.  Doc. 1 ¶ 11.  The notice of removal asserts that the parties are completely diverse, as

5    Macedo is a citizen of California and both Dolgen California, LLC and DG Strategic VII, LLC

6    are citizens of Tennessee.  *Id.* ¶¶ 14–15.  The notice of removal further asserts the amount in

7    controversy is met because Macedo seeks lost wages, emotional distress damages, punitive

8    damages, and attorneys' fees, and that, collectively, these would plausibly exceed $75,000.[2]  *See*

9    *generally id.*

10         Macedo moves to remand this case to state court, arguing that Dollar General's notice of

11   removal fails to adequately allege the amount in controversy.  Doc. 3 at 7.  Specifically, she

12   asserts that Dollar General does not provide adequate evidence in support of its figures and that

13   the cases to which Dollar General cites are not sufficiently analogous to serve as evidence of the

14   amount in controversy in this case.  *Id.* at 6.  Macedo also requests related attorneys' fees,

15   asserting Dollar General's removal was unreasonable and frivolous.  *Id.* at 7.  On July 17, 2023,

16   Dollar General opposed the motion and requested that the Court take judicial notice of several

17   jury verdicts in other pregnancy discrimination cases and of Macedo's complaint.  Doc. 5.

18   Macedo filed a reply in support of her motion on July 27, 2023, along with an opposition to

19   Dollar General's request for judicial notice.[3]  Doc. 6.

20         On January 29, 2025, Dollar General filed a supplemental declaration regarding the

---

[2] The notice of removal acknowledges that Macedo also seeks other damages—for medical expenses, lost benefits, work-related expenses, expenses incurred in obtaining other employment, and missed rest breaks—but does not rely on such potential damages in arguing that the amount in controversy is met.  Doc. 1 ¶¶ 38–39.

[3] The Court takes judicial notice of the jury verdicts, as they are matters of public record and are therefore properly the subject of judicial notice.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); *see also Perez v. Hermetic Seal Corp.*, Case No. CV 16-05211-BRO (FFMx), 2016 WL 5477990, at *3 n.3 (C.D. Cal. Sept. 27, 2016) (taking judicial notice of jury verdicts and collecting cases doing the same).  As Macedo's complaint is a filing in this case, it is unnecessary to take judicial notice of it.

3

amount in controversy, indicating that, after filing the motion to remand, Macedo made a settlement demand in excess of $500,000. Doc. 15 ("Russell Decl.") ¶ 3. In support of this figure, Macedo claimed that Macedo's emotional distress damages alone total $300,000 and that Macedo's attorneys' fees in this case will total around $350,000 through trial. *Id.* Given the amount of the settlement demand, Dollar General requested that Macedo withdraw the present motion to remand. *Id.* ¶ 4.

Macedo did not withdraw her motion to remand or file a response to the supplemental declaration, and on March 19, 2025, Dollar General filed a motion for sanctions against Macedo and her counsel, arguing that the motion to remand was frivolous and unnecessarily duplicated the pleadings in this case. Doc. 16 at 5 (citing 28 U.S.C. § 1927). Dollar General also requested judicial notice of several of Macedo's filings in this case, including her motion to remand and reply in support of her motion to remand.[4] Doc. 16-1. On April 2, 2025, Macedo filed an opposition to Dollar General's motion for sanctions, contending sanctions against Macedo and Macedo's counsel are not appropriate and requesting that this Court impose sanctions on Dollar General's counsel for filing the motion. Doc. 17 at 11. Dollar General filed a reply in support of its motion on April 14, 2025. Doc. 19.

## II. MACEDO'S MOTION TO REMAND

### A. Legal Standard

#### 1. Removal Jurisdiction

A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). Removal is proper when a case originally filed in state court presents a federal question or where there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Section 1447(c) "is strictly

---

[4] As noted, it is unnecessary to take judicial notice of filings in this case.

4

construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *Acad. Of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1061 (9th Cir. 2021) (quoting *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004); *see also Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that removal is proper."). As such, a federal court must reject jurisdiction and remand the case to state court if there is any doubt as to the right of removal. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

### 2. Amount in Controversy

A notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). When a plaintiff contests removal jurisdiction, and the dollar amount in controversy is not evident in the complaint, the removing party must demonstrate, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold. *Id.* at 88; *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 849 (9th Cir. 2020) (citation omitted). While the moving party may not speculate as to the amount in controversy for each claim without setting forth the "underlying facts supporting its assertion," *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010), the burden is not daunting, as "a removing defendant is not obligated to research, state, and prove the plaintiff's claim for damages," *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008).

The amount in controversy is calculated based upon "the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018); *see also Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648–49 (9th Cir. 2016) ("All recoverable damages should be considered in amount in controversy."). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (citation omitted).

Although courts begin their inquiry by looking at the complaint, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (citations omitted). The court may consider facts in the removal petition, "summary-judgment-type evidence relevant to the amount in controversy" and evidence filed in opposition to the motion to remand. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (citation omitted); *see also Lenau v. Bank of Am., N.A.*, 131 F. Supp. 3d 1003, 1005 (E.D. Cal. 2015) (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002) (per curiam)).

A defendant may rely on reasonable assumptions to prove that it has met the statutory threshold. *See Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022). "The district court should weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922, 924 (9th Cir. 2019). Yet "there is an important distinction between a court offering entirely new or different assumptions itself versus modifying one or more assumptions in the removing party's analysis." *Jauregui*, 28 F.4th at 996. It remains true that "[w]here a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." *Id.* at 996. However, where "the reason a defendant's assumption is rejected is because a different, better assumption is identified," the court "should consider the claim under the better assumption—not just zero-out the claim." *Id.* This is in part because "the amount in controversy is supposed to be an estimate of the entire potential amount at stake in the litigation," which "demonstrates the unrealistic nature of assigning $0" to a plaintiff's claims. *Id.* at 994.

**B.     Analysis**

Macedo argues that Dollar General has not met its burden to establish that the amount in controversy exceeds $75,000.[5] See Doc. 3 at 3. However, Macedo's settlement demand in excess of $500,000, as well as the nature and number of her claims and related requests for

---

[5] Macedo does not contest that the parties are completely diverse. *See generally* Doc. 3.

6

damages and attorneys' fees, demonstrate that the amount in controversy is met.

      1.  Settlement Demand

  On October 2, 2024, Macedo's counsel made a settlement demand "in excess of $500,000." Russell Decl. ¶ 3. In support of this figure, the demand letter claimed that emotional distress damages and attorneys' fees alone would amount to $650,000. *Id.* Specifically, the letter claimed that Macedo had suffered emotional distress in the amount of $300,000 and estimated that attorneys' fees through trial would be $350,000. *Id.* A settlement letter is relevant evidence of the amount in controversy when "it appears to reflect a reasonable estimate of the plaintiff's claim."[6] *Cohn*, 281 F.3d at 840. "A settlement letter may hold less persuasive value if a plaintiff attempts to 'disavow [the] letter.'" *Estrada v. KAG West, LLC*, No. 24-cv-257-KES-CDB, 2024 WL 2874591, at *5 (E.D. Cal. June 6, 2024) (citing *Cohn*, 281 F.3d at 840).

  The settlement demand reflects that Macedo values her claims above the jurisdictional minimum. Courts are more inclined to rely on a settlement letter as relevant evidence of the amount in controversy, where—as here—a party provides detailed bases for the demand. *Compare Owens v. Westwood Coll. Inc.*, No. CV 13–4334–CAS–(FFMx), 2013 WL 4083624, at *3 (C.D. Cal. Aug. 12, 2013) (finding settlement demand not reasonable estimate of claim in part because it provided no explanation of how the amount was calculated), *and Leon v. Gordon Trucking, Inc.*, 76 F. Supp. 3d 1055, 1070–71 (C.D. Cal. 2014) (finding counsel's damages estimate insufficient to demonstrate amount in controversy given it "provided[d] no details concerning the damages calculation"), *with Guillen v. Kindred Healthcare Operating, Inc.*, No. CV 17–02196, 2018 WL 1183354, at *3–4 (C.D. Cal. Mar. 7, 2018) (finding settlement demand supported by "detailed bases" of expected amount of damages to be relevant evidence of amount

---

[6] The letter is properly considered in determining the amount in controversy though it did not precede the notice of removal or motion to remand. Although the amount in controversy is determined based on the claims at the time of removal, summary-judgment-type evidence after removal may still indicate the value of the claims at the time of removal. *See Kroske*, 432 F.3d at 980 (using interrogatory answers taken after removal to consider value of claims at time of removal); *Walker v. CorePower Yoga, LLC*, No. 12cv4-WHQ-DHB, 2013 WL 2338675, at *6–7 (S.D. Cal. May 28, 2013) (analyzing settlement offer made after removal as evidence of amount in controversy, though ultimately finding letter unpersuasive for other reasons).

1  in controversy), *and Estrada*, 2024 WL 2874591, at *5 (finding settlement letter plaintiff
2  disavowed as inflated was still credible evidence of amount in controversy because of specificity
3  and reasonableness of demands).

4        Though Macedo makes some attempt to disavow her settlement demand as "optimistic,"
5  Doc. 17 at 7, her settlement demand is relevant evidence of the amount in controversy in this
6  case.[7] Macedo provided "detailed bases" for her demand—identifying $300,000 in emotional
7  damages and $350,000 in estimated attorneys' fees. Russell Decl. ¶ 3. Providing support for the
8  calculation of her overall demand by detailing specific amounts for individual claims tends to
9  indicate that her demand reflects her genuine valuation of her case. *See Guillen*, 2018 WL
10 1183354, at *3–4; *see also Estrada*, 2024 WL 2874591, at *5. Moreover, Macedo's settlement
11 demand is necessarily conservative in some respects, as it does not encompass the compensatory
12 and punitive damages she also seeks, which could be significant, nor damages for lost wages,
13 medical expenses, lost benefits, work-related expenses, expenses incurred in obtaining other
14 employment, or missed rest breaks. Therefore, Macedo's settlement demand demonstrates that
15 she values her claims well above $75,000.[8]

16              2.     Emotional Distress and Punitive Damages

17     Macedo's complaint requests emotional distress damages and punitive damages. *See, e.g.*,
18 Compl. ¶¶ 23, 25, 37, 50; Doc. 1 ¶ 28; Doc. 5 at 11–12. Emotional distress damages and punitive
19 damages are available under FEHA, and thus both are properly considered in determining the
20 amount in controversy. *See Commodore Home Systems, Inc. v. Superior Court*, 32 Cal. 3d 211,

---

[7] Macedo did not respond to Dollar General's supplemental declaration in support of the motion to remand, which detailed Macedo's settlement demand. *See* Docket. Rather, Macedo makes this assertion only in her opposition to Dollar General's motion for sanctions. Doc. 17 at 7.

[8] Additionally, Macedo's estimates fall within the range of jury verdicts and fees on similar claims in comparable cases. *See infra* Parts II.B.2–3. This further evinces that her demand is a reasonable valuation rather than mere posturing. Even if Macedo were posturing by staking out an initial position that is more aggressive than what she expects Dollar General to agree to, "to believe that plaintiffs' counsel chose to *begin* the parameters of a possible settlement at [over eight] times the statutory threshold without any reasonable basis for doing so [forces the Court] to disbelieve its own eyes and abandon all common sense." *Guidry v. Dow Chem. Co.*, No. 19-12233, 2020 U.S. Dist. LEXIS 202274, at *9 (E.D. La. Oct. 28, 2020).

220–221 (1982) (punitive damages may be obtained under FEHA); *Peralta Cmty. Coll. Dist. v. Fair Emp. & Hous. Com.*, 52 Cal. 3d 40, 48 (1990) (emotional distress damages may be obtained under FEHA cause of action). When, as here, the complaint does not assert the amount of emotional distress damages and punitive damages, "a defendant may introduce evidence of jury verdicts from cases with analogous facts" to establish the probable damages. *Owuor v. Wal-Mart Assocs., Inc.*, No. 2:21-cv-02232, 2022 WL 1658738, at *3 (E.D. Cal. May 25, 2022) (citing *Kroske*, 432 F.3d at 980).

Dollar General offers several cases in which pregnancy discrimination and wrongful termination claims under FEHA resulted in emotional distress damages and punitive damages awards each far exceeding $75,000. Doc. 5 at 11–13. Dollar General cites *Hagan v. Archdiocese of Los Angeles*, BC146615, 2001 WL 803303 (Cal. Super. Ct. May 28, 2001) (Doc. 5-1, Ex. 2, at 27–28) (plaintiff awarded $300,000 in emotional distress damages and $200,000 in punitive damages on pregnancy discrimination claim where defendant refused to renew plaintiff's employment contract after plaintiff informed her boss that she was pregnant); *Vasquez v. Del Rio Sanitarium, Inc.*, BC411724, 2010 Jury Verdicts LEXIS 51699 (Cal. Super. Ct. Dec. 3, 2010) (Doc. 5-1, Ex. 3) (plaintiff awarded $125,000 in emotional distress damages for wrongful termination due to pregnancy and failure to accommodate under FEHA); *Wrysinski v. Agilent Technologies, Inc.*, SCV 13516, 2004 Jury Verdicts LEXIS 49775 (Cal. Super. Ct. June 17, 2004) (Doc. 5-1, Ex. 4, at 32–34) (plaintiff awarded $117,000 in emotional distress damages and $3,854,320 in punitive damages for pregnancy discrimination claim under FEHA for being fired after becoming pregnant); *Moore v. JMK Golf LLC*, CU-11-00162, 2013 Jury Verdicts LEXIS 9416 (Cal. Super. Ct. Sept. 16, 2013) (Doc. 5-1, Ex. 6, at 38–39) (plaintiff awarded $150,000 in punitive damages on pregnancy discrimination claim where server was fired after informing her boss she was pregnant and requesting leave); and *Lopez v. Bimbo Bakeries USA, Inc.*, No. A119263, 2009 WL 1090375 (Cal. Ct. App. Apr. 23, 2009) (California court of appeal upheld $2 million in punitive damages awarded to plaintiff for pregnancy discrimination where plaintiff notified employer of pregnancy, requested accommodations, and was terminated the same day).

Macedo protests that these cases are not sufficiently analogous to her case to provide

1  relevant evidence of the amount in controversy for a variety of reasons—including that the cited
2  cases, unlike her case, involved a collective bargaining agreement that included maternity leave,
3  the termination of the employee while on medical leave, or the employer's failure to renew the
4  employee's contract.  Doc. 3 at 5–6; Doc. 6 at 4–5.  However, "[t]he fact that [cases presented as
5  analogies] involve distinguishable facts is not dispositive."  *See Simmons v. PCR Tech.*, 209
6  F. Supp. 2d 1029, 1033 (9th Cir. 2002).  "To serve as benchmarks" of the amount at stake, cases
7  need not be "perfectly analogous" but rather need only be "sufficiently similar."  *Owuor*, 2022
8  WL 1658738, at *3 (citing *Simmons*, 209 F. Supp. 2d at 1033–34).

9       Akin to the allegations in this case, the cases that Dollar General cites similarly involve a
10 plaintiff becoming pregnant and notifying the defendant-employer, and the employer failing to
11 provide reasonable accommodations and, instead, promptly terminating the employee.  *See* Doc.
12 5 at 11–12; Compl. ¶¶ 9–17.  Dollar General has adequately analogized to the core facts of these
13 cases to show that sizable emotional distress and punitive damages awards, likely each in excess
14 of the jurisdictional minimum, are at stake in this pregnancy discrimination and wrongful
15 termination case.[9]

### 3. Attorneys' Fees

17 Macedo also requests attorneys' fees in accordance with FEHA and section 12965 of the
18 California Government Code.  *See, e.g.*, Compl. ¶¶ 27, 39, 51, 62.  When attorneys' fees are
19 authorized by statute or contract, it is proper to include them in the amount in controversy.
20 *Fritsch v. Swift Transp. Co.*, 899 F.3d 785, 788 (9th Cir. 2018).  It is proper to consider the
21 amount of attorneys' fees that will accrue throughout the entirety of the litigation, as that is the
22 amount at stake.  *Id.* at 795.

23      Litigation costs in discrimination cases are often significant.  *See Simmons*, 209 F. Supp.

---

[9] Other courts have likewise found many of these cases to be sufficiently similar to pregnancy discrimination and wrongful termination claims so as to be indicative of the amount in controversy.  *See Owuor*, 2022 WL 1658738, at *8–9 (noting that *Wrysinski* and *Hagan* show large amounts in controversy with pregnancy discrimination, and that "[c]ourts often require far less at this stage"); *Alavez v. Brinker Rest. Corp.*, No. EDCV 16-1450, 2016 WL 11746260, at *3 (C.D. Cal. Sept. 23, 2016) (noting *Lopez* was comparable to woman fired from restaurant job after becoming pregnant for purposes of FEHA pregnancy discrimination claim).

2d at 1035 (noting that "attorneys' fees in individual discrimination cases often exceed the damages"). Dollar General cites several cases in its notice of removal for the proposition that "it is 'more likely than not' that [Macedo] will be seeking an attorneys' fees award of at least $75,000.00 if [she] prevails at trial." Doc. 1 ¶ 35 (citing, among other cases, *Lopez*, 2009 WL 1090375, at 18–21 ($1 million in attorneys' fees in FEHA wrongful termination case); *Harris v. City of Santa Monica*, 47 Trials Digest 10th 15, 2007 WL 4303742 (Cal. Sup. Ct. Feb. 27, 2007) ($401,188 in attorneys' fees in wrongful termination case)).

Macedo herself estimated in her settlement demand that attorneys' fees through trial will total around $350,000. Russell Decl. ¶ 3. That estimate is plausible. At plaintiff's counsel's rate of $650.00 per hour, Doc. 17-1 ¶ 9, the $350,000 estimate would indicate that plaintiff's counsel anticipates around 538 attorney-hours being spent on this case through trial ($350,000 divided by $650 per hour is about 538 hours). Courts have upheld awards for attorneys' fees for more hours in similar cases. *See Ackerman v. Western Elec. Co.*, 860 F.2d 1514, 1520 (9th Cir. 1988) (upholding plaintiff's counsels' award of 556 hours-worth of fees for FEHA claim); *Crommie v. Public Utilities Com'n*, 840 F. Supp. 719, 724–25 (N.D. Cal. 1994) (awarding 1,184.5 hours-worth of fees to plaintiff's counsels for preparing and litigating FEHA discrimination case). Even using the lower rate of $300 per hour that many courts have found reasonable for employment cases instead of plaintiff's counsel's actual rate, *see, e.g.*, *Sasso v. Noble Utah Long Beach, LLC*, No. CV-14-09154, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015), an estimated 251 attorney hours would, by itself, meet the jurisdictional threshold.

Thus, the jurisdictional threshold is likely met through the amount in controversy for attorneys' fees alone, and it is certainly plausibly met when the amount in controversy for attorneys' fees is aggregated with the emotional and punitive damages at issue.

### 4.   Lost Wages

Finally, Macedo requests damages for lost wages. *See generally* Compl. Dollar General asserts that $28,800 is in controversy for this claim through the date of removal.[10] Doc. 1 ¶ 26. It

---

[10] Lost wages and benefits through the expected end of litigation, not just through removal, are part of the amount at stake in this litigation and thus are included in the amount in controversy.

is somewhat unclear if Macedo disputes this amount. *See* Docs. 3, 6 (asserting "[d]efendant[s] engage[] in speculative calculations" but never explicitly contesting the $28,800 figure). Out of an abundance of caution, the Court assumes this amount is disputed and considers whether Dollar General has met its burden of demonstrating this figure by a preponderance of the evidence.

In support of this figure, Dollar General cites the declaration of Odeht Robaina, a Dollar General human resources director, which provides that Macedo was earning $20.00 per hour at the time of her alleged improper termination on September 20, 2022. Doc. 1-3 ¶ 8; *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (defendants may use declarations as evidence of amount in controversy). Dollar General then arrives at its figure by multiplying $20 per hour by 40 hours per week by 36 weeks (the number of weeks that passed between her termination and Dollar General's removal of this case). Doc. 1 ¶ 26. However, Dollar General does not provide any evidence to support its allegation in its notice of removal that Macedo was a full-time employee working 40 hours per week, *see id.* ¶ 24, and Macedo's complaint is silent on the issue. Thus, Dollar General has not met its burden to prove by a preponderance of the evidence that this amount is in controversy. Regardless, as noted, Macedo's settlement demand, as well as the emotional distress damages, punitive damages, and attorneys' fees at issue, demonstrate that the amount in controversy in this case exceeds $75,000.

5.    Attorney's Fees Associated with the Notice of Removal

Given that the motion to remand is denied, Macedo's request for attorneys' fees relating to the notice of removal, Doc. 3 at 7, is denied as moot. *Cf.* 28 U.S.C. § 1447 ("An order remanding [a] case may require payment of . . . attorney fees, incurred as a result of the removal.").

### III.    DOLLAR GENERAL'S MOTION FOR SANCTIONS

### A.    Legal Standard

Courts may sanction attorneys for "excess costs, expenses, and attorneys' fees" if they "unreasonably and vexatiously" multiply the proceedings in a case. 28 U.S.C. § 1927. Sanctions under § 1927 "must be supported by a finding of subjective bad faith." *Lake v. Gates*, 130

---

*Fritsch*, 899 F.3d at 793–94. Dollar General acknowledges this but chose to include lost wages only up until the date of removal in arguing the amount in controversy. *See* Doc. 1 ¶¶ 25–26.

12

F.4th 1064, 1070 (9th Cir. 2025) (quoting *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015)).  "[B]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument. . . ." *Id.* (citation omitted).  Frivolous arguments are baseless legal or factual contentions so weak as to be evidence of improper purpose.  *See In re Girardi*, 611 F.3d 1027, 1062 (9th Cir. 2010).

Courts may also issue sanctions under their inherent authority when attorneys or parties act "in bad faith, vexatiously, wantonly, or for oppressive reasons. . . [or] willfully abuse judicial processes."  *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)); *see, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 40–41, 58 (1991) (upholding sanction of party instead of counsel).  Sanctions under a court's inherent authority "are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose."  *Fink*, 239 F.3d at 994.  Courts are not precluded from sanctioning conduct under inherent authority simply because that conduct may also be sanctioned under an alternative source of authority.  *Chambers*, 501 U.S. at 50.

For sanctions, under both § 1927 and pursuant to a court's inherent powers, "district courts enjoy much discretion in determining whether [they] are appropriate."  *Haynes v. City and County of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012) (citation omitted).  Both sources of authority should "be exercised with extreme caution" and "restraint."  *In re Keegan Mgmt. Co.*, 78 F.3d 431, 437 (9th Cir. 1996); *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1223 (9th Cir. 2010).

B.     <u>Analysis</u>

Dollar General moves for sanctions under 28 U.S.C § 1927 and the court's inherent authority, accusing Macedo and her counsel of unreasonably and vexatiously multiplying court proceedings by filing, and refusing to withdraw, a frivolous motion to remand.  Doc. 16 at 5.  Specifically, Dollar General asserts that the motion to remand "was predicated on a demonstrably false assertion regarding the amount in controversy" given Macedo's subsequent settlement demand in excess of $500,000.  *Id.*  Dollar General has not cited any case in which filing a

13

1    motion to remand or failing to withdraw a motion to remand in light of a subsequent settlement
2    demand has resulted in sanctions, and the Court is aware of none.
3          Both types of sanctions require a finding of frivolousness and subjective bad faith, which
4    may be satisfied by acting with intent or recklessness.  *Lake*, 130 F.4th at 1070; *Fink*, 239 F.3d
5    at 994.  Macedo's settlement demand in excess of the amount in controversy a year after removal
6    does not automatically make Macedo's motion to remand frivolous.  Macedo's motion to remand
7    does not directly assert that less than $75,000 is at stake in this case but rather challenges whether
8    Dollar General's use of analogous cases satisfied Dollar General's burden to show over $75,000
9    in controversy at the time of removal.  *See generally* Doc. 3.  Though the Court finds the cases to
10   be sufficiently analogous in this Order, Macedo's contrary argument, though undeniably weak,
11   did not rely on factual misrepresentations or frivolous legal claims.[11]  While Macedo's settlement
12   demand provides evidence that she values her case at more than $75,000 and supports Dollar
13   General's basis for removal jurisdiction, it does not sufficiently demonstrate that Macedo's single
14   motion to remand was reckless or meant to harass, oppress, or aid some improper purpose, as is
15   required for a finding of subjective bad faith.[12]  *See Lake*, 130 F.4th at 1070; *Fink*, 239 F.3d at
16   994.
17   ///
18   ///
19   ///
20   ///

---

[11] *Compare Lake*, 130 F.4th at 1068–70 (motion reiterating claims the court already labeled as objectively false was frivolous), *and Girardi*, 611 F.3d at 1066–67 (submitting knowingly false party name was frivolous), *and Preiss v. S & R Prod. Co.*, No. 2:10-CV-01795-RLH, 2011 WL 4402952, at *3 (D. Nev. Sept. 20, 2011) (ignoring clearly controlling precedent was frivolous), *aff'd sub nom. Preiss v. Horn*, 533 F. App'x 715 (9th Cir. 2013), *with Ayer v. White*, No. CV 21-8773, 2022 WL 2343040, *4 (C.D. Cal. June 28, 2022) (weak arguments that are unlikely to succeed are not necessarily frivolous).

[12] Although the Court declines to sanction Macedo or her counsel at this time, as noted above, her motion to remand conflicted with her subsequent settlement demand of nearly eight times the jurisdictional minimum, and it did little more than require Dollar General to brief how it had clearly met its burden.  Macedo's request that Dollar General's counsel be sanctioned for filing the motion for sanctions, *see* Doc. 19 at 10, is meritless and is denied.

### IV. CONCLUSION AND ORDER

Based upon the foregoing, Macedo's motion to remand, Doc. 3, and Dollar General's motion for sanctions, Doc. 16, are **DENIED**.

IT IS SO ORDERED.

Dated:   August 1, 2025

_____
UNITED STATES DISTRICT JUDGE